IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 8:12CV201 |
| | ) | |
| V. | ) | |
| | ) | |
| $63,530.00 IN UNITED STATES CURRENCY, | ) ) | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court following a non-jury trial held on September 17, 2013. Pursuant to Fed. R. Civ. P. 52, the Court makes the following Findings of Fact and Conclusions of Law.

## BACKGROUND

On June 12, 2012, the United States filed a Complaint for Forfeiture *In Rem,* alleging that Defendant currency is forfeitable to the United States as either proceeds of drug transactions or as money used to facilitate the same. The Defendant property consists of $63,530 in U.S. currency which was seized from Mark Brewer on November 28, 2011, by the Douglas County, Nebraska Sheriff's Office. Mark Brewer (hereinafter "Claimant") filed a claim for return of the Defendant currency.

## FINDINGS OF FACT

1.  The Defendant is $63,530 in U.S. currency. The money was seized within the District of Nebraska and is presently in the custody of the U.S. Marshals Service.

2.  The Defendant currency came into the custody of law enforcement by way of a traffic stop conducted by Deputy Dave Wintle ("Wintle") of the Douglas County Sheriff's Office, on November 28, 2011. Wintle is assigned to the canine division of the criminal

interdiction unit and has extensive training in criminal interdiction, including interdiction involving controlled substances. Wintle stopped the vehicle for failure to signal a lane change. Wintle observed the vehicle cross three lanes of traffic along the interstate without turning on his blinker. The driver and sole occupant of the vehicle was Claimant.

  3. Wintle approached Claimant's vehicle, and asked Claimant for his driver's license and registration, and then asked Claimant to have a seat in his police cruiser. Claimant complied. When Wintle got in the cruiser, Claimant asked Wintle if the traffic stop was about his expired vehicle registration. Claimant told Wintle that he was planning to pay it when he received his disability check. Wintle then informed Claimant of why he was stopped, and began to examine Claimant's paperwork and run a criminal history check. During that time, Wintle began asking Claimant questions about his travel plans. Claimant stated that he was traveling to Los Angeles to visit his uncle, and that he was hoping his uncle would give him a job. Claimant informed Wintle that he did not have enough money for hotels, so he was staying at rest stops on the way. Claimant also told Wintle that he was thinking of buying a house. Claimant mentioned to Wintle that he had been in the Air Force, but that he was not working and was on disability.

  4. While in the Air Force, Claimant served as a military police officer and weapons specialist. He was medically discharged in 2008, due to depression and bipolar disorder. Claimant received the good conduct medal, national defense service medal, and global war on terrorism service medal as part of his decorations during his military service.

  5. Wintle completed the record check, which did not show any major violations. Wintle then told Claimant he would not get a citation and returned Claimant's registration and driver's license. Wintle then asked Claimant if he could ask him a few more questions and Claimant agreed. Wintle asked Claimant a series of questions about the contents of Claimant's car. Wintle asked Claimant if he had any weapons in the car, Claimant said he did not. Wintle asked if he had any drugs in the car. Claimant said he did not. Wintle asked if there were any large amounts of cash in the car. Claimant responded no.

  6. Claimant then gave consent for Wintle to walk his canine, Kubo, around Claimant's vehicle. Kubo is trained to detect the odor of narcotics. Wintle and Kubo were

trained and certified as a drug detector canine team at the time of the traffic stop. Kubo was deployed and alerted to the odor of narcotics on the driver's side of the vehicle. Kubo also indicated to the odor of narcotics coming from the trunk of Wintle's vehicle. Wintle returned to the cruiser and asked Claimant if there was any reason why Kubo would indicate to the odor of narcotics coming from the vehicle. Claimant initially said no, but later said his bag in the front seat of the vehicle may have been around the odor of drugs.

7. Wintle patted Claimant down for weapons, finding approximately $1,000 in his front pocket. This money was later returned to Claimant. Wintle then proceeded to search Claimant's vehicle.

8. Wintle observed two backpacks in the trunk of Claimant's vehicle. Upon opening one of them, Wintle smelled a strong odor of raw marijuana. The backpack contained what appeared to be a white, plastic grocery sack. Wintle attempted to open the sack, and had to rip through a total of three bags before he could see the contents. The sacks contained sixty-four bundles of currency. Each bundle was folded and held by a rubber band. Sixty-three of the bundles consisted of $1,000. The last bundle held $530. This money consists of the Defendant currency.

9. Wintle returned to the cruiser and asked Claimant about the money. At that time, Claimant admitted to having money in the vehicle and told Wintle that the cash was for a down payment on a house. Claimant told Wintle that there were documents in his car that would explain where he got the money.

10. Claimant's vehicle was towed to the Sheriff's office and a further search was conducted. Deputies found an iPad and an iPhone 4S in Claimant's vehicle. They also found disability documents and old paystubs and tax returns. Additionally, deputies found a notice of late payment for a rental unit and articles entitled "How to Make Wicked Hash" and "How to Make Weed Oil without Blowing Yourself Up." No drugs were found in the vehicle.

11. While at the Sheriff's office, Wintle deployed Kubo to conduct a discretionary sniff. Kubo was brought into a locker room in the canine building and did not indicate to the presence of any narcotics. Wintle removed Kubo from the room, and another deputy placed

the seized currency into one of the lockers. Wintle then brought Kubo back into the locker room, and Kubo indicated to the odor of narcotics at the locker where the Defendant currency was hidden.

12. At trial, Claimant testified that at the time of the traffic stop, he was on his way to Los Angeles to buy a home at a discounted rate. Claimant testified that he gathered the paperwork necessary to purchase the home, emptied his safe and placed the money in a backpack. Claimant testified that he learned of the opportunity to purchase the home from his uncle. Claimant stated that one of his uncle's friends, who he could only identify as "Xavier," inherited a home and was selling the home at a discounted rate.

13. Claimant admitted to lying to Wintle about the money. Claimant testified that due to his posttraumatic stress disorder, he had a serious distrust of the government. Claimant stated that after his deployment, he began hoarding money. He testified that he would take cash from his military bank and put the money in a safe at his home. Claimant stated that he was able to save approximately $35,000 by the time he got out of the military and that he received approximately $11,000 as a lump sum from the Department of Veterans Affairs in 2011. He was also receiving disability checks for being a disabled veteran. Claimant testified that the money in the vehicle was government pay that he received from his active service in the military or disability payments he received from his service-related disability.

14. The Court finds Wintle's testimony credible in that it is consistent with the evidence of record. The Court finds Claimant's testimony less than credible as it primarily consists of self-serving, uncorroborated statements.

## CONCLUSIONS OF LAW

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1345, 1355 and 21 U.S.C. § 881. Venue in this district is also proper. Claimant previously argued through a motion to dismiss (filing 20) that the Complaint fails to state a cause of action, that this Court lacks jurisdiction and that the Complaint is barred by the applicable statute of limitations because Plaintiff did not timely notify Claimant of its intent to initiate forfeiture

of the Defendant currency. Through an order dated May 10, 2013, the Court rejected these arguments (filing 26). The Court declines to reconsider these issues and stands by its earlier decision.

As stated on the record at trial, the Court finds that the search and seizure of Claimant did not violate his constitutional rights. Claimant committed a traffic infraction by failing to signal as he changed lanes. "[A] traffic violation - however minor - creates probable cause to stop the driver of a vehicle." *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002) (citations omitted). The traffic stop was reasonable in duration and Claimant agreed to answer further questions following the traffic enforcement. Claimant consented to allowing Kubo to walk around his vehicle. Once Kubo alerted to the exterior of the vehicle, Wintle had probable cause to search the vehicle. *U.S. v. $404,905 in U.S. Currency*, 182 F.3d 643, 647 (8th Cir. 1999).

Title 21, United States Code, § 881 provides for the forfeiture of "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance . . . all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation." 21 U.S.C. § 881. The Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 983, provides that in a suit or action brought under a civil forfeiture statute for the civil forfeiture of any property:

> (1) the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture; [and]
>
> (3) if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense.

18 U.S.C. § 983.

If the government satisfies its burden, the claimant has the burden of proving by a preponderance of the evidence that he/she is an innocent owner. 18 U.S.C. § 983. An "innocent owner" is defined as "an owner who - (i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that

5

reasonably could be expected under the circumstances to terminate such use of the property." *Id*.

Having carefully reviewed the matter, the Court finds that the government has shown by a preponderance of evidence that there was a substantial connection between drugs and the Defendant currency. Claimant was found with a large amount of cash in the trunk of his vehicle. "Although insufficient by itself to demonstrate a connection to illegal drugs, the quantify of cash seized . . . is highly probative of a connection to some illegal activity." *United States v. $121,100 in U.S. Currency*, 999 F.2d 1503, 1507 (11th Cir. 1993) (citation omitted). Also, the Defendant currency was enclosed within three plastic sacks and placed in a backpack which was found in vehicle's trunk. This evidence of concealment further supports a connection between the money and drug trafficking. *See United States v. $84,615 in U.S. Currency*, 379 F.3d 496, 501 (8th Cir. 2004) (finding that packaging money to mask drug odors was evidence of a connection to drug trafficking). Moreover, the way in which the currency was bound with rubber bands in $1,000 increments supports the government's case. "The Eighth Circuit has 'adopted the common-sense view that bundling and concealment of large amounts of currency, combined with other suspicious circumstances, supports a connection between money and drug trafficking.'" *United States v. $45,000 in U.S. Currency*, No. 8:11CV14, 2012 WL 6680447, *4 (D. Neb. Dec. 21, 2012) (quoting *United States v. $124,700 in U.S. Currency*, 458 F.3d 822, 826 (8th Cir. 2006)). *See also United States v. $46,000 in U.S. Currency*, No. 8:04CV170, 2007 WL 1342542, *6 (D. Neb. May 7, 2007) ("Carrying a large amount of cash wrapped in rubber bands while traveling on the highway is strong evidence of a connection to drug activity") (internal quotation omitted).

Likewise, the fact that Claimant was deceitful when questioned by Wintle about the presence of money in his vehicle is another suspicious circumstance supporting a connection with drug activity. *See $46,000 in U.S. Currency*, 2007 WL 1342542 at *7 ("[P]roviding false statements to an officer about having money in a vehicle is further reason to question the legitimacy of the currency's presence") (internal quotation and citation omitted); *United States v. $117,920.00 in U.S. Currency*, 413 F.3d 826, 829 (8th Cir. 2005) (finding that a claimant's lies about having money in the car supported connection between money and drug activity).

The drug dog's alert to the Defendant currency and the backpack's smell of marijuana also support a connection between the money and drug trafficking. "While a canine sniff

alone may not sufficiently prove that currency is related to illegal drug activity," under the totality of the circumstances in this case, Kubo's indication to the currency supports a connection between the money and drug trafficking. *$46,000 in U.S. Currency*, 2007 WL 1342542 at *7 (internal citation omitted). *See also United States v. $67,220.00*, 957 F.2d 280, 285 (6th Cir. 1992) (stating that "a positive dog reaction is at least strong evidence of a connection to drugs").

Claimant's behavior during his interaction with Wintle undermines the credibility of his assertions of legitimate reasons for possessing the money. During the stop, Claimant told Wintle that he did not have funds to pay his vehicle registration and was staying in rest stops because he did not have enough money for hotels. However, Claimant had approximately $1,000 in his pocket. Claimant also denied having large amounts of money in the vehicle. It was only after the money was found that Claimant admitted to having cash and stated that he planned to use the money as a down payment on a home. Although Plaintiff testified that his uncle told him about the opportunity to buy a home, Claimant's uncle was not called to testify and Claimant did not produce any other evidence regarding this alleged opportunity.

Claimant did provide evidence regarding his financial ability to accumulate the seized funds. However, this evidence alone is insufficient to support Claimant's position that he lawfully possessed the money. *See United States v. Approximately $77,000 in U.S. Currency*, No. 1:11-cv-01251, 2012 WL 1196498, *12 (E.D. Cal. Apr. 10, 2012) ("[W]hile Claimant may be able to account for the fact that he could have amassed a large amount of cash . . . his failure to address or explain the use of his vehicle's trunk as a bank . . . cannot overcome the evidence proffered by the Government in the form of a sophisticated dog sniff, large sum of money, and the packing and bundling of that money"). Claimant failed to produce sufficient evidence supporting his claim that the money is not connected with drug activity, and the Court specifically finds that Claimant's testimony lacks credibility, as it primarily consists of uncorroborated, self-serving statements.

Lastly, Claimant contends that forfeiture of the Defendant currency would violate the Eighth Amendment and constitute an unconstitutionally excessive fine. "Civil forfeiture under § 881(a)(4) is subject to the limitations of the Excessive Fines Clause." *United States v. One 1970 36.9' Columbia Sailing Boat*, 91 F.3d 1053, 1057 (8th Cir. 1996). Claimant has the initial burden of making a prima facie showing of gross disproportionality. *Id*. Claimant has failed to make this showing and the forfeiture is not otherwise in violation of the Eighth

Amendment.

Accordingly,

**IT IS ORDERED:**

1. Defendant currency shall be forfeited to the United States.

2. Judgment will be entered by separate document.

**DATED February 4, 2014.**

                                        **BY THE COURT:**

                                        **S/ F.A. Gossett**
                                        **United States Magistrate Judge**